IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| REHABILITATION HOSPITAL OF PHENIX CITY, LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 3:22-cv-660-RAH<br>) |
| XAVIER BECERRA, | )<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

This is a complaint for judicial review brought by Plaintiff Rehabilitation Hospital of Phenix City, LLC d/b/a Regional Rehabilitation Hospital ("Plaintiff" or "RHP"), an inpatient rehabilitation facility, against the Secretary of the United States Department of Health and Human Services ("Secretary Becerra" or "agency"). RHP seeks reversal of twenty-two Medicare Appeals Council ("Council") administrative decisions.[1] RHP claims the agency's final decision denying these reimbursement claims should be reversed because (1) the decisions are not supported by substantial evidence and (2) the Council did not apply the correct legal standards.

The parties have filed dueling summary judgment motions, which are accompanied by twenty-two administrative records. For the reasons below, the agency's summary judgment motion will be granted, and thus the Council's

---

[1] Similar appeals have been filed by affiliated companies in five other federal courts. (*See* doc. 36.) The issues in all five cases appear to be the same. Two of those courts have ruled against RHP's affiliated companies. *See generally Encompass Health Rehab. Hosp. of Sarasota, LLC v. Becerra*, No. 22-cv-2573, 2024 WL 4149856 (M.D. Fla. Sept. 11, 2024); *Encompass Health Rehab. Hosp. of Charleston, LLC v. Becerra*, No. 22-cv-04171, 2024 WL 3833197 (D.S.C. Aug. 15, 2025).

decisions affirmed, and RHP's summary judgment motion will be denied.

## LEGAL STANDARD

In an action for judicial review of a Medicare claim denial, the district court sits as an appellate tribunal. *See* 42 U.S.C. § 405(g) (providing for judicial review of final decisions of the Commissioner of Social Security); 42 U.S.C. § 1395ff(b)(1)(A) (incorporating § 405(g) for Medicare). "Summary [j]udgment is particularly appropriate in cases in which a district court is asked to review a decision rendered by a federal administrative agency." *Mahon v. U.S. Dep't of Agric.*, 485 F.3d 1247, 1253 (11th Cir. 2007) (citation omitted).

The appropriate legal standard for review for Medicare appeals is supplied by 42 U.S.C. § 405(g). Under that statute, "judicial review of the Secretary's decision regarding a claim for Medicare benefits is limited to 'whether there is substantial evidence to support the findings of the . . . Secretary, and whether the correct legal standards were applied.'" *Gulfcoast Med. Supply, Inc. v. Sec'y, Dep't of Health & Hum. Servs.*, 468 F.3d 1347, 1350 n.3 (11th Cir. 2006) (per curiam) (brackets omitted) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Fla. Med. Ctr. of Clearwater, Inc. v. Sebelius*, 614 F.3d 1276, 1280 (11th Cir. 2010) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). Moreover, the district court may not reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the agency. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

And under the Administrative Procedure Act ("APA"), a district court must set aside an agency decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Review under this standard is highly deferential, with a presumption in favor of finding the agency

action valid. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (discussing the high level of deference to the agency's decision).

## BACKGROUND

### A.   Medicare's Administrative Appeals Process

Medicare is a federally funded health insurance program for the elderly and disabled that is administered by the Centers for Medicare and Medicaid Services, Department of Health and Human Services ("CMS"). One of Medicare's objectives is to reimburse healthcare service providers for reasonable and necessary inpatient rehabilitative therapy provided to Medicare beneficiaries. Medicare will not make payments to service providers if the services "are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A). Beneficiary eligibility is determined by four requirements (known as the beneficiary eligibility criteria). These requirements consider the beneficiary's need for "active and ongoing therapeutic intervention," the beneficiary's ability to "actively participate in, and benefit from, an intensive rehabilitation therapy program," the beneficiary's stability or lack thereof at the time of admission to a facility, and whether the beneficiary's condition requires physician supervision. 42 C.F.R. § 412.622(a)(3) (2010). Along with the beneficiary eligibility criteria, CMS' regulations also impose a host of other limitations, such as technical documentation criteria. *See id.* § 412.622(a)(4).

CMS contracts with private government contractors to process and make these initial reimbursement decisions. *See* 42 U.S.C. § 1395kk-1; 42 C.F.R. §§ 405.904(a)(2), 405.920–405.928. Objections to these contractors' initial decisions are subject to a multi-tier appeal process. *See* 42 U.S.C. § 1395ff; 42 C.F.R. § 405.1112. First, a service provider may submit a claim to the contractor for redetermination. *See* 42 U.S.C. § 1395ff(a)(3)(A). Second, the provider may ask for reconsideration from a new, independent contractor. *See id.* § 1395ff(c), (g); 42

3

C.F.R. § 405.904(a)(2). "Third, the provider may request *de novo* review before an [administrative law judge ("ALJ")] within the Office of Medicare Hearings and Appeals (OMHA), an agency independent of CMS." *Fam. Rehab., Inc. v. Azar*, 886 F.3d 496, 499 (5th Cir. 2018) (citing 42 U.S.C. § 1395ff(d) and 42 C.F.R. § 405.1000(d)). In that review, the parties may "present testimony, cross-examine witnesses, and submit written statements of law and fact." *Id.* (citing 42 C.F.R. § 405.1036(c)–(d)).

"Fourth, the provider may appeal to the Medicare Appeals Council, . . . an organization independent of both CMS and OMHA." *Id.* (citing 42 C.F.R. § 405.1100). During the fourth stage, "[t]he Council reviews the ALJ's decision *de novo* . . . ." *Id.* Appeals to the Council must be in writing and "identify the parts of the ALJ's . . . action with which the party requesting review disagrees and explain why he or she disagrees . . . ." 42 C.F.R. § 405.1112(a)–(b). Appeals to the Council may be made on a standard form, but it is not required. *Id.* § 405.1112(a). The Council's review is considered the final decision of the agency. *Id.* § 405.1130.

If the service provider is dissatisfied with the final decision of the Council, the provider may seek judicial review by commencing a civil action in an appropriate federal district court. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 405(g), a district court's review of the Council's decision is limited to (1) whether the Council applied the proper legal standards and (2) whether substantial evidence supports the Council's decision.

**B.  RHP and its Medicare Reimbursement Claims**

Over ten years from 2012 to 2022, CMS, through its contractors, denied over 200 Medicare reimbursement claims submitted by RHP for reasons varying from factual errors to incorrect application of the regulations. RHP appealed these decisions and has successfully reversed many of them. Seventy-three claims were denied by administrative law judges after an administrative hearing and were then

4

appealed by RHP to the Council for review. Twenty-two of those appeals remain here.

In each review request (Form DAB-101) submitted by RHP to the Council, RHP stated the following in response to the question that stated, "I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):"

> The beneficiary met the criteria for admission to the IRF. The ALJ's decision did not take into account all testimony provided at the hearing. We reserve the right to file a supplemental brief pursuant to § 405.1120.

(*See, e.g.*, doc. 35-118 at 15; doc. 35-322 at 5.)

RHP provided this stock statement in each of its twenty-two review requests even though each appeal involved distinct patients, distinct services, distinct administrative records, and distinct appeals processes. Indeed, across the twenty-two appeals at issue here, the administrative records spanned from around 200 pages in the shorter ones, of which there were only a few, to over 3,000 pages in the longer ones. These administrative records included medical records, coding pages, and sworn testimony.[2] (*See generally* doc. 35-4.) And as to the ALJs' decisions, each decision was reasoned, usually ranging from seven to ten pages, with detailed factual findings and legal conclusions. All told, there were seven different ALJs who made decisions in the twenty-two appeals.

In the twenty-two appeals involved here, the Council reviewed all twenty-two ALJ decisions. Although each decision was based on its own record, the decisions all bore a similar, and largely identical, finding on RHP's appeals to the Council — RHP's review requests did not identify what portion of the record, particularly the hearing testimony, the ALJ did not consider and did not identify the parts of the ALJ's decision with which RHP disagreed as required by 42 C.F.R. § 405.1112(b).

---

[2] The cumulative administrative record is over 21,500 pages.

# DISCUSSION

The parties have filed opposing summary judgment motions disputing whether the Council's decisions were in error. In its summary judgment motion, RHP argues the Council reversibly erred in concluding that RHP had not properly preserved its appeals to the Council and in ignoring clear errors made by the ALJs. The agency argues the Council was correct in rejecting RHP's merits-based arguments because of preservation issues. It also argues that, in any event, the Council's decisions are supported by substantial evidence. The Court will address these in turn.

## A.  Legal Standard Review

The Court begins with the law. Congress granted the agency (and thereby CMS) authority to prescribe such regulations as may be necessary to carry out the administration of the Medicare program. *See* 42 U.S.C § 1395hh(a)(1). Under that authority, CMS promulgated 42 C.F.R. § 405.1112(b) and identified the content required to be included in a request for Council review. In a review request, a party must "identify the parts of the ALJ's or attorney adjudicator's action with which the party requesting review disagrees and explain why he or she disagrees with the ALJ's or attorney adjudicator's decision, dismissal, or other determination being appealed." 42 C.F.R. § 405.1112(b). "For example, if the party requesting review believes that the ALJ's or attorney adjudicator's action is inconsistent with a statute, regulation, CMS Ruling, or other authority, the request for review should explain why the appellant believes the action is inconsistent with that authority." *Id*. The Council limits its review to exceptions that the provider raises in its review request. *Id*. § 405.1112(c). When a party fails to articulate the specific reasons for its disagreement with an ALJ's decision, the Council will "adopt the ALJ's action" if the decision contains no clear error. Medicare Program: Changes to the Medicare Claims Appeal Procedures, 67 Fed. Reg. 69313–36 (Nov. 15, 2002).

1.      **42 C.F.R. § 405.1112**

RHP argues the Council erred because RHP sufficiently complied with 42 C.F.R. § 405.1112(b) when it identified that it disagreed with the ALJs' beneficiary eligibility determinations and it explained why.  RHP further argues that the agency is impermissibly requiring a provider, as an appealing party, to provide detailed factual and legal arguments in its review requests.  RHP also argues that the agency is treating RHP differently from similarly situated parties who were not required to comply with such stringent standards.

First, the Council's determination that RHP's review requests are insufficient under 42 C.F.R. § 405.1112(b) is consistent with the purpose of that regulation as described in the Federal Register.  *See* 67 Fed. Reg. at 69335–36; *see also Callahan v. U.S. Dep't of Health & Hum. Servs.*, 939 F.3d 1251, 1262–63 (11th Cir. 2019) (referring to the Federal Register to determine a regulation's purpose); *Washington v. Comm'n of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018) (explaining that in addition to looking at the text of a regulation for the proper interpretation, courts "look to the stated purpose of the regulation").  In the Federal Register, CMS explained that the content requirements of 42 C.F.R. § 405.1112(b) were necessary because review requests often "state[d] only general reasons for appealing, such as 'I disagree with the ALJ's decision' or 'The decision is not supported by the evidence and is inconsistent with the law.'" 67 Fed. Reg. at 69335.  As a result, the Council was often reviewing aspects of the ALJ decisions "with which the party may not actually disagree." *Id*.  To address the inefficiency of that system, CMS added to 42 C.F.R. § 405.1112 the requirement that appellants "include in their request[s] for review the specific reasons they disagree with an ALJ's action." *Id*. at 69336; *see also generally* Medicare Program: Changes to the Medicare Claims Appeal Procedures, 70 Fed. Reg. 11420 (March 8, 2005) (establishing that the appeal requirements in 42 C.F.R. § 405.1112(b) were effective May 1, 2005).  Such a

change, CMS explained, was necessary to enable "the [Council] to provide an efficient and focused review of those aspects of an ALJ's action with which the party disagrees." 67 Fed. Reg. at 69336.

Here, RHP's review requests are prime examples of the type of generalized appeal statements that 42 C.F.R. § 405.1112(b) was designed to address. None of RHP's review requests explained why RHP disagreed with each ALJ's decision, and none of the review requests pointed to ignored medical records or testimony. In fact, all twenty-two review requests were identical. Simply put, the review requests did no more than state the "general reasons for appealing" and effectively mirrored the examples of deficient appeal statements highlighted in the Federal Register. *See id*. at 69335. There is little difference between "[t]he decision is not supported by the evidence" and RHP's stock statement that "[t]he ALJ's decision did not take into account all testimony provided at the hearing." (*Id*. at 69335; Doc. 19 at 10 (alteration in original).)

RHP contends that its review requests were sufficiently detailed because it was clear that RHP was appealing the "issue of Medicare coverage," and not the liability determinations. That argument however ignores the text and intent of 42 C.F.R. § 405.1112(b), as well as the nature of the underlying ALJ decisions. The requirement that parties point to the "parts" of an ALJ's decision with which it disagrees cannot be satisfied by merely pointing to an ALJ's ultimate coverage determination. *See* 42 C.F.R. § 405.1112(b). Otherwise, there would have been little need for the regulation in the first place. *See* 67 Fed. Reg. at 69335–36.

Each ALJ decision contains numerous findings and is based on an entirely different administrative record, spanning between 200 and 3,000 pages. Given that, it was particularly important that RHP's review requests identify the parts in the ALJ decisions with which it disagreed and identify the testimony or record evidence that was ignored or misconstrued. RHP's argument that its review requests identified

8

the "parts" of the decisions with which it disagreed is disingenuous. RHP's vague reference to the ALJ coverage determinations—without more—is insufficient to identify the "parts" of the ALJ decisions with which it disagreed.

Second, RHP argues that by requiring it to explain in detail why it disagrees with an ALJ decision, the Council is effectively mandating that an appealing party file a brief. This is nonsense. Although a party may opt to file a brief along with its appeal to the Council (and RHP's stock review request said that it reserved the right to do so), a brief is not required. *See* 42 C.F.R. § 405.1120; 67 Fed. Reg. at 69336 ("Because the [Council] is concerned with the content rather than the form of the appeal, we would not require parties to file formal briefs or other pleadings."). RHP points to no evidence in the record suggesting that the Council was imposing a briefing requirement. In fact, the Council only mentioned briefs to note that RHP had "reserved the right" to file a supplemental brief but never did. And nowhere in its decisions did the Council insist that RHP "provide detailed factual and/or legal arguments in its request for review." (Doc. 37 at 42.) Rather, the Council determined that RHP was required to do what 42 C.F.R. § 405.1112(b) mandates: "[I]dentify the parts of the ALJ's . . . [decision] with which [it] disagrees and explain why [it] disagrees with the ALJ's . . . decision." Thus, the Council correctly determined that RHP failed to meet this requirement. *See generally Encompass Health Rehab. Hosp. of Sarasota,* 2024 WL 4149856 (concluding that the Council did not err in concluding that the provider failed to comply with 42 C.F.R. § 405.1112(b) in its review request forms); *Encompass Health Rehab. Hosp. of Charleston*, 2024 WL 3833197 (same).

Third, RHP argues the Council has acted arbitrarily and capriciously by inconsistently applying 42 C.F.R. § 405.1112(b) because in similar circumstances the Council did not apply 42 C.F.R. § 405.1112(b). None of RHP's referenced

9

examples show disparate treatment.³ The Court notes that RHP's affiliates raised the same argument in their other cases with the same examples, and the two district courts that have addressed that argument and those examples have rejected them. *See Encompass Health Rehab. Hosp. of Sarasota*, 2024 WL 4149856, at *4–5; *Encompass Health Rehab. Hosp. of Charleston*, 2024 WL 3833197, at *10. The Court sees no reason to expound on this issue any further. In sum, while a lengthy legal brief, like those typically filed in federal court, is not required, the provider must still identify the specific errors in the ALJ's decision and indicate why that finding or conclusion is in error. *See* 42 C.F.R. § 405.1112(b). The Council, like this Court, should not be required to scour a lengthy administrative record to locate and determine where and why broadly claimed legal error exists. *Cf. Borden v. Cheaha Reg'l Mental Health Ctr., Inc.*, 760 F. App'x 828, 830 (11th Cir. 2019) (per curiam) ("We will not scour the record or formulate arguments for a litigant . . . and all issues that are not briefed are abandoned.").

In sum, 42 C.F.R. § 405.1112(b) is not ambiguous. The plain language of 42 C.F.R. § 405.1112(b) supports the Council's determinations. *See* 42 U.S.C. § 405(g). Nor was it arbitrary or capricious for the Council to adopt the ALJ decisions without comment after RHP failed to comply with 42 C.F.R. § 405.1112(b).⁴ Given the detailed and multifaceted nature of the ALJ decisions, RHP should have done more than broadly state in a boilerplate form that the beneficiaries met the eligibility criteria and that the ALJ "did not take into account all the testimony provided at the

---

³ In a somewhat inconsistent tone, elsewhere in its summary judgment brief, RHP notes that other Council decisions have no precedential application and "are applicable solely to the specific facts under consideration." (Doc. 37 at 47.) Thus, they bear little consideration here.

⁴ But even if genuinely ambiguous, the agency's interpretation of the regulation is reasonable, does not create any unfair surprise or post hoc rationalization, and aligns with the purpose outlined in the Federal Register. *See Kisor v. Wilkie*, 588 U.S. 558, 573, 579 (2019); *see also Legal Env't Assistance Found., Inc. v. EPA*, 276 F.3d 1253, 1262 (11th Cir. 2001).

10

hearing."

## 2. Clear Legal Error Claims

Like its affiliates in the other cases, RHP also argues the Counsel erred because (1) in some cases, the ALJs relied on the beneficiary's "stability" as the reason to deny coverage, (2) in other cases, the ALJs said the beneficiaries' conditions were insufficiently "complex" to warrant intensive rehabilitation therapy, and (3) in some other cases, the ALJs failed to assemble a complete administrative record.[5] These same arguments have been raised to and rejected by other courts. They will be rejected here too.

First, none of the ALJs' decisions impermissibly imposed a "stability" requirement. The wording of the ALJs' decisions varies from case to case. But each ALJ decision generally concludes that the patient's rehabilitation needs and the monitoring of their medical conditions could have been safely met with a lower level of care. This finding reflects the regulatory requirement that beneficiaries must need intensive therapy and close supervision to qualify for intensive rehabilitative therapy coverage. *See* 42 C.F.R. § 412.622(a)(3)(i)–(ii), (iv). RHP does not identify any instance in which an ALJ used "stability" as an essential condition of eligibility. And there is nothing forbidding ALJs from considering the stability of a patient in their overall assessment of the patient's need for intensive rehabilitative facility ("IRF") services. Each decision reflects an awareness that a patient must be "sufficiently stable" to participate in IRF services, while still recognizing that a patient with no medical need for intensive therapy and close supervision cannot be reimbursed for such services.

Second, none of the ALJ decisions impermissibly imposed a "complexity" requirement separate from the beneficiary eligibility criteria. True, some ALJs used

---

[5] These are examples of the types of error by an ALJ that RHP could have specified in its review requests.

11

the term "complexity," but it was a general term used to describe qualified IRF patients. The flip side of that term is that patients who were not complex or insufficiently complex did not require IRF services to address their medical needs. This is not a term otherwise foreign to the subject matter of Medicare patient eligibility, as CMS has also used the term. *See* Medicare Program; Inpatient Rehabilitation Facility Prospective Payment System for Federal Fiscal Year 2010, 74 Fed. Reg. at 39796 (Aug. 7, 2009) (observing that "the medical complexity of rehabilitation patients has increased over time"); *id*. at 39788 (explaining that "patients for whom IRF coverage was intended . . . require complex rehabilitation in a hospital environment"). The ALJs are not obligated to avoid this term simply because it does not appear in the text of 42 C.F.R. § 412.622, as long as their decisions are anchored in one or more of the beneficiary eligibility criteria. That was the case here.

Finally, RHP asserts that the administrative record in three cases is incomplete. RHP submits that the statements of the Medicare contractors and ALJs assume the existence of records not included in the record. RHP does not provide a copy of these records to this Court. RHP merely makes an assumption totally void of proof. In any event, this argument is waived, as RHP did not make this argument to the ALJs or the Council. "Under ordinary principles of administrative law, a reviewing court will not consider arguments that a party failed to raise in timely fashion before an administrative agency." *Mahon*, 485 F.3d at 1254–55 (citation and quotations omitted); *Chipman v. Shalala*, 90 F.3d 421, 423 (10th Cir. 1996) ("Plaintiff did not present his remaining two arguments on appeal to either the ALJ or the Appeals Council. Accordingly, he has waived those points[,] and we decline to address them.").

**B.  Substantial Evidence**

In its Complaint, RHP also argues that the agency's final decisions are not

supported by substantial evidence. But in its summary judgment brief, RHP does not advance such an assertion. The agency moves for summary judgment on this issue. In its response, RHP does not contest the agency's arguments. Instead, it focuses entirely on the legal arguments.

Substantial evidence review is a low bar. Substantial evidence exists so long as "a reasonable mind might accept as adequate to support [the agency's] conclusion[s,] . . . even if the evidence appears to weigh against the decision . . . ." *Roberts Sand Co., LLLP v. Sec'y of Lab.*, 568 F. App'x 758, 759 (11th Cir. 2014) (per curiam) (cleaned up) (citing *Martin*, 894 F.2d at 1529).

The Court has reviewed the briefs, the ALJ decisions, and the record (begrudgingly so) in all twenty-two appeals. After providing a detailed summary of the pertinent patient's medical history, including multiple medical factors indicating that IRF services were not necessary, each ALJ concluded that the beneficiary eligibility criteria were not satisfied. RHP does not identify any reason, or even argue, that the evidence in any particular case is insufficient from a substantial evidence standpoint to support the ALJs' conclusions. As a result, the Court considers this claim abandoned. But the Court also finds that the ALJ decisions were supported by substantial evidence and that there was no clear error in the Council's decisions adopting them.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment (Doc. 37) is **DENIED**; and
(2) Defendant's Cross-Motion for Summary Judgment (Doc. 40) is **GRANTED**.

**DONE**, this the 7th day of November 2024.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE